UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LILLIE NELSON,

Plaintiff,

*-against-*

EPWORTH CHILDREN AND FAMILY SERVICES,

Defendant.

No. ____________

**COMPLAINT**

JURY REQUESTED

## INTRODUCTION

1. Plaintiff Lillie Nelson is a young adult, who experienced periods of homelessness as a youth. In this action, Plaintiff challenges the Defendant Epworth Children and Family Services' discriminatory and tortious treatment while she was enrolled in their Transitional Living Program and her improper and illegal termination from this program.

2. Youth homelessness is rooted in family conflict and poverty.[1] Many young people who are homeless have experienced trauma both before and after becoming homeless, often related to interactions with foster care, child welfare, and juvenile justice systems.[2] Young people become homeless at alarming rates. A 2017 study found that one in ten young adults in the United States between the ages of eighteen to twenty-five have experienced homelessness—approximately 3.5 million youth nationally, and in the twelve-month study period, one in thirty

[1] *Youth and Young Adults*, NAT'L ALL. TO END HOMELESSNESS, https://endhomelessness.org/homelessness-in-america/who-experiences-homelessness/youth/ (last updated Jan. 2025).
[2] *Id.*

youth aged thirteen to seventeen experienced homelessness.[3] Young people experiencing homelessness are more likely to be youth with disabilities.[4]

3. The U.S. Department of Housing and Urban Development (HUD) provides federal funding to local Continuum of Care Programs (CoCs), which plan a comprehensive approach to providing housing and services for people who are experiencing homelessness or are at risk of becoming homeless in their community. CoCs enter into contracts with local organizations working to reduce and prevent homelessness, and issue subgrants of HUD funding to these organizations.[5]

4. Transitional Living Programs (TLPs) are among the types of programs that CoCs fund. TLPs provide structured housing to youth between the ages of 16 and 22 who are without a safe place to live. TLPs were created to serve as a temporary safety net and a support system for young people as they transition to self-sufficiency and independent living.

5. Homeless after her high school graduation, Plaintiff Lillie Nelson stayed with friends, stayed at a shelter, and lived in her car until she eventually was admitted to Defendant's Magnolia TLP.

6. Plaintiff hoped and expected Defendant would help her reach self-sufficiency and stable housing. As an individual with a disability, she expected to receive reasonable accommodations during her tenancy at Defendant's Magnolia TLP.

---

[3] *See* M.H. MORTON ET AL., CHAPIN HALL AT THE UNIV. OF CHICAGO, MISSED OPPORTUNITIES: LGBTQ YOUTH HOMELESSNESS IN AMERICA 2 (2018); *see also* 34 U.S.C. § 11201.
[4] *Id.*
[5] *Cf.* "Continuum of Care (CoC) Program Eligibility Requirements, HUD EXCHANGE, https://www.hudexchange.info/programs/coc/coc-program-eligibility-requirements/; *Homeless Emergency Assistance and Rapid Transition to Housing Act of 2009*, Pub. L. No. 111-22, 123 Stat. 1663 (May 20, 2009) codified at 42 U.S.C. §§ 11331 et seq.

7. Instead, Defendant repeatedly failed to accommodate Plaintiff's disability and precipitously terminated her from the program on the eve of her brain surgery, forcing her back into homelessness as she struggled to care for herself after she was discharged from the hospital.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, which provides for jurisdiction in the United States district courts over civil actions arising under the Constitution, laws, or treaties of the United States; and has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.

9. This is an action for declaratory relief to enforce Plaintiff's rights under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a); and Missouri common law. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2022, and Rule 57 of the Federal Rules of Civil Procedure.

10. Plaintiff also seeks damages as authorized by 42 U.S.C. § 3613(c)(1), 29 U.S.C. § 794a(a)(2), and Missouri common law.

11. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in St. Louis City, Missouri, which is within the Eastern District of Missouri.

## THE PARTIES

12. Plaintiff Lillie Nelson resides in St. Louis City, Missouri.

13. Defendant Epworth is a Missouri nonprofit corporation headquartered in St. Louis County. It is registered with the Internal Revenue Service as a tax-exempt entity.

## STATEMENT OF FACTS

14. Plaintiff Lillie Nelson is a young adult with multiple disabilities.

15. Until her graduation from high school in May 2023, Plaintiff resided with her father.

16. She was then asked to leave her family's home and became homeless, sleeping in her car, at friends' houses, and at emergency shelters.

17. In or around November 2023, Plaintiff was admitted to and began residing at Defendant's Magnolia TLP.

18. Defendant owns and manages the Magnolia TLP.

19. Defendant employs Epworth staff, some of whom work onsite at the Magnolia TLP.

20. Defendant hired and otherwise authorized the Magnolia TLP staff to provide comprehensive case management and 24-hour support onsite for TLP residents, including Plaintiff.

21. The acts of the staff at the Magnolia TLP and other Epworth staff as alleged in this Complaint were taken under Defendant's authority and direction to further the business and interests of Defendant.

22. The acts of the staff at the Magnolia TLP and other Epworth staff as alleged in this Complaint were within the course and scope of their employment by Defendant, naturally arising from the performance of their job duties.

23. The Magnolia TLP is a structured housing program that houses teenagers and young adults ages 17 to 19 who may otherwise remain in situations of abuse, neglect, or homelessness.

24. The Magnolia TLP is located in a 2-story apartment building.

25. Plaintiff was eighteen years old when she began residing at Defendant's Magnolia TLP and turned nineteen years old within a month of moving in.

26. At the time of her placement at Defendant's Magnolia TLP, Defendant's staff informed Plaintiff that she would be eligible for housing in the TLP until her twentieth birthday.

27. At the time of her placement at Defendant's Magnolia TLP, Defendant's staff informed Plaintiff of a termination procedure that included notice and a reasonable time frame to move out of the program.

28. Defendant receives federal funds, including funds from the U.S. Department of Housing and Urban Development ("HUD") that are passed through the St. Louis City and St. Louis County Continuums of Care.

29. Plaintiff suffers from rheumatoid arthritis and a lateral patellar tilt.

30. Because these conditions affect her ability to ambulate, Plaintiff requires the assistance of forearm crutches.

31. Defendant's staff had knowledge of Plaintiff's disability and use of forearm crutches.

32. At various times while living at Defendant's Magnolia TLP, Plaintiff requested use of the building's back door, which would allow her to significantly shorten the walk from the parking lot to her apartment.

33. On every occasion until her termination on October 9, 2024, Defendant denied the accommodation without consideration, explanation, or offering any alternatives.

34. Following Plaintiff's termination on October 9, 2024, Defendant allowed Plaintiff to use the Magnolia TLP building's back door to move her belongings out.

35. Defendant did not engage in any interactive process with Plaintiff regarding her accommodation request.

36. Plaintiff's lack of access to the building's back door prevented Plaintiff from having an opportunity to enjoy the premises equal to that of her non-disabled neighbors.

37. Plaintiff's lack of access to the building's back door increased her physical and mental burden when navigating to her home.

38. Between February 2024 and May 2024, while a tenant in Defendant's Magnolia TLP, Plaintiff was forced to seek emergency medical care on at least six separate occasions for serious symptoms that included, among other things, racing heartbeat and shortness of breath.

39. On at least one occasion, an ambulance came to the Magnolia TLP to transport Plaintiff to emergency medical care.

40. In addition to these symptoms, over the next several months, while a tenant in Defendant's Magnolia TLP, Plaintiff began experiencing sudden, severe facial pain. This pain affected Plaintiff's ability to sleep, eat, talk, and go about her daily life.

41. On or around August 2024, while a tenant in Defendant's Magnolia TLP, Plaintiff was diagnosed with trigeminal neuralgia, a chronic pain condition caused by pressure on the trigeminal nerve in the brain.

42. Between August 2024 and September 2024, while a tenant in Defendant's Magnolia TLP, Plaintiff was forced to seek medical care on at least six separate occasions for trigeminal neuralgia symptoms, including severe pain in her face that impacted her ability to sleep, eat, talk, and go about her daily life.

43. Defendant knew or should have known of Plaintiff's symptoms and medical conditions.

44. Plaintiff's medical providers scheduled her for brain surgery on October 10, 2024, to address the diagnosed trigeminal neuralgia and its attendant symptoms.

45. Shortly after being notified of her surgery date, Plaintiff notified Defendant Epworth that she would be gone for approximately one to two weeks starting on October 10, 2024. She explained this absence was due to a planned hospitalization for brain surgery.

46. Plaintiff expected to return to her apartment after hospitalization. She intended to recuperate and reside there for several weeks and until her twentieth birthday.

47. On October 9, 2024, Defendant's staff suddenly called Plaintiff to a meeting in the Magnolia TLP office. Plaintiff sat alone on a couch facing five or six staff members, not all of whom were familiar to her.

48. Defendant's staff informed Plaintiff that they were terminating her from the Magnolia TLP effective that day.

49. Defendant's staff did not provide Plaintiff with written notice of the reason for her termination from the Magnolia TLP.

50. Defendant's staff did not provide Plaintiff with an opportunity to appeal their termination decision.

51. Defendant's staff did not ensure that Plaintiff had a safe place to stay that night, the night before her scheduled brain surgery, or upon her discharge from the hospital.

52. Defendant's staff then required Plaintiff to remove her belongings from her apartment on the evening of October 9, 2024.

53. Plaintiff had no safe place to go on the night of October 9, 2024.

54. Upon notification that Defendant was terminating her from the Magnolia TLP, Plaintiff cried and begged Defendant's staff to allow her to remain in the TLP until her birthday.

55. Defendant's staff were hostile and threatening toward Plaintiff and her friends, who had to come to help her move her belongings out of her apartment.

56. Plaintiff was unable to pack all her belongings or arrange for a place to take them in the short time given for her move-out.

57. Defendant's staff assured Plaintiff that they would store some of her belongings.

58. Defendant's precipitous termination of Plaintiff from the Magnolia TLP made her homeless the night before her scheduled brain surgery.

59. Plaintiff spent several hours the day before her scheduled brain surgery attempting to find shelter, to no avail.

60. Plaintiff was hospitalized from October 10, 2024, through October 15, 2024.

61. On the date of her discharge, Plaintiff lacked housing.

62. Plaintiff thus attempted to recover from her surgery while homeless.

63. Over the next several weeks, Plaintiff slept at friends' places, in her car, in a chapel, on a park bench, and in an emergency shelter.

64. The lack of a safe home or consistent access to a clean bed, kitchen, and bathroom delayed Plaintiff's recovery.

65. Plaintiff visited the emergency room more than once for post-operative complications and was readmitted to the hospital shortly after her October 15 discharge.

66. After experiencing homelessness for more than a month, Plaintiff secured temporary housing on her own and without any assistance from Defendant.

67. At that time, Plaintiff requested her belongings from Defendant.

68. Defendant's staff told Plaintiff that they had disposed of her belongings.

69. Plaintiff suffered both physically and emotionally due to Defendant's refusal to provide her with reasonable accommodations during her residency in the Magnolia TLP.

70. Plaintiff suffered both physically and emotionally due to Defendant's improper termination of her from the Magnolia TLP.

71. Defendant's failures to act and actions caused Plaintiff physical pain and suffering, humiliation, anxiety, embarrassment, frustration, loss of dignity, and disruptions to her recovery and daily life. Plaintiff continues to suffer such damages.

## STATEMENT OF CLAIMS

### Count One: Violation of the Fair Housing Act, 42 U.S.C. § 3604

### Failure to Provide Reasonable Accommodation

72. Plaintiff is a person with a disability, formerly called a "handicap," as defined by 42 U.S.C. § 3602(h).

73. Defendant's Magnolia TLP is a dwelling as defined by 42 U.S.C. § 3602(b).

74. Defendant is a housing provider as defined by 42 U.S.C. § 3603(c).

75. Due to her disability, Plaintiff needed an accommodation in order to have full enjoyment or an equal opportunity to use and enjoy her dwelling unit and the public and common use areas at Defendant's Magnolia TLP.

76. The accommodation that Plaintiff required was reasonable.

77. Defendant refused and failed to provide this required accommodation.

78. Defendant discriminated against Plaintiff by treating her less favorably than others by reason of her disability in violation of 42 U.S.C. § 3604(f)(2).

79. Plaintiff was harmed by Defendant's refusal and failure to provide the required accommodation.

80. Plaintiff was harmed by Defendant's discrimination.

**Count Two: Violation of the Fair Housing Act, 42 U.S.C. § 3604**

**Discriminatory Termination**

81. Plaintiff was qualified to remain in Defendant's Magnolia TLP program through her twentieth birthday.

82. Defendant terminated Plaintiff's tenancy on October 9, 2024, many weeks before her twentieth birthday.

83. Defendant's termination of Plaintiff was on the basis of her disability.

84. Defendant's termination of Plaintiff was motivated by a discriminatory reason.

85. Plaintiff was harmed by Defendant's action in terminating her from the Magnolia TLP program.

86. Plaintiff was harmed by Defendant's discrimination.

**Count Three: Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**

87. Plaintiff is an individual with a disability as defined by 29 U.S.C. § 705(20)(B).

88. Defendant is an entity whose principal program or activity is the provision of housing and social services. 29 U.S.C. § 794(b).

89. Defendant owns the Magnolia TLP, which is a program receiving federal financial assistance as defined by 29 U.S.C. § 794(b) and 24 CFR § 8.3.

90. Plaintiff was otherwise qualified to participate in and receive the benefits of the services and programs offered to Defendant's tenants at the Magnolia TLP.

91. Defendant excluded Plaintiff from participation and denied her the benefits of the Magnolia TLP's programs and services on the basis of her disability in violation of 29 U.S.C. § 794(a) and 24 CFR § 8.4.

92. Plaintiff was harmed by Defendant's action in terminating her from the Magnolia TLP program.

93. Plaintiff was harmed by Defendant's discrimination.

**Count Four: Intentional Infliction of Emotional Distress**

94. Plaintiff was a youth who relied on Defendant to provide support so she could exit homelessness.

95. Defendant claimed to provide safe housing to youth who would otherwise be unsafe.

96. Defendant's conduct in failing to accommodate Plaintiff's disability, making her homeless the night before brain surgery, and forcing her into homelessness while recovering from surgery was extreme and outrageous.

97. Defendant's conduct toward Plaintiff was beyond the bounds of decency.

98. Defendant's conduct must be regarded as atrocious and intolerable in a civilized community.

99. Defendant acted with a reckless disregard for the risk of severe distress Plaintiff would experience.

100. Defendant's conduct caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks that this Court enter judgment in favor of Plaintiff as follows:

A. Assume jurisdiction of this matter;

B. Declare Defendant's failure to provide Plaintiff with required reasonable accommodations unlawful;

C. Declare Defendant's termination of Plaintiff from the Magnolia TLP was unlawful;

D. Award Plaintiff actual, compensatory, and punitive damages;

E. Award Plaintiff's litigation costs and reasonable attorney's fees; and

F. Grant such other further relief as the Court may deem just and proper.

Respectfully submitted,

LEGAL SERVICES OF EASTERN MISSOURI

By *<u>/s/ Elizabeth Hope Fink</u>*
Elizabeth Hope Fink, MO Bar #72800
Lisa J. D'Souza, MO Bar #65515
Victoria Dempsey, MO Bar # 69696
701 Market Street
Suite 1100
St. Louis, MO 63101
(314) 256-8793 direct
(314) 451-1187 fax
ehfink@lsem.org
ljdsouza@lsem.org
vedempsey@lsem.org

NATIONAL HOMELESSNESS LAW CENTER

By *<u>/s/ John A. Salois</u>*
John A. Salois, Senior Youth Shelter & Housing *
Attorney, NJ Bar # 003242005
1400 16th Street, NW
Suite 425
Washington, DC 20036
202-638-2535
jsalois@homelesslaw.org
*motion for pro hac vice admission forthcoming

**ATTORNEYS FOR PLAINTIFF**